

**MICHAEL A. CARDOZO**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**STEVE STAVRIDIS**
*Special Federal Litigation Division*
(212) 788-8698
(212) 788-9776 (fax)

April 2, 2008

**By ECF**
Hon. John G. Koeltl
United States District Judge
United States Courthouse
500 Pearl St., Room 1030
New York, NY 10007

Re:   Medrano, et ano v. The City of New York, et al., 07 CV 7026 (JGK)

Your Honor:

    I am the Assistant Corporation Counsel representing defendant The City of New York (the "City") in the referenced civil rights action.[1] I am submitting this motion pursuant to Fed. R. Civ. P. 72(a) to object to the order of Magistrate Judge Michael Dolinger made on March 26, 2008 inasmuch as it directs the City to produce the following items: 1) photographs of the police officers shown to plaintiffs by the Civilian Complaint Review Board ("CCRB") during the course of their investigation into this incident, and 2) the disciplinary records of Police Officer Michael Krantz relating to his termination from the New York City Police Department ("NYPD").

**Background**

    The incident giving rise to this complaint occurred on the evening of October 31, 2006. Plaintiffs, Jose Medrano and his sister Melissa Medrano, allege that they were falsely arrested subjected to excessive force while leaving their home located at 3593 Bainbridge Avenue, Bronx, New York. The City asserts that Jose Medrano was initially detained because he matched the description of an individual who was observed firing four shots moments earlier

---

[1] Plaintiffs have amended their complaint to name three police officers as defendants, namely, Police Officer Kevin Doyle, Sgt. Luis Torres and former Police Officer Michael Krantz. Upon information and belief, only Kevin Doyle has been served with process and his answer is due on April 16, 2008.

outside plaintiffs apartment building. The description of the shooter had been broadcasted over police radio by an officer who had witnessed the shots being fired. It was the intention of the officers who had stopped Jose Medrano to detain him until such time as he could be identified by the officer who witnessed the shooting (the witness officer was on the scene, but at a different location at the time plaintiff was stopped). However, Jose Medrano began to act in a belligerent manner and physically resisted the detention necessitating that officers use force to contain him. Melissa Medrano also became belligerent and obstructed the officers by pulling them away from her brother, which resulted in her arrest. Both plaintiffs were arrested on multiple charges including resisting arrest, disorderly conduct and obstruction of governmental administration. The Medrano plaintiffs were both processed on the charges, but were released prior to arraignment because the prosecutor declined to prosecute.

### **CCRB Police Officer Photographs**

The CCRB conducted an investigation into this matter wherein it showed plaintiffs a photo array of the 17 police officers who were determined to be at the situs of plaintiffs' arrest. Plaintiff Melissa Medrano was able to identify two officers from this array, namely, Sgt. Luis Torres and PO Kenneth Doyle, both of whom have been named defendants in this action. Plaintiff Jose Medrano was able to identify four officers from the photo array, though he could not specify what role they played with respect to his arrest.

The City produced the CCRB report, however, it redacted the photographs of the officers based on several factors, including safety and privacy concerns. Plaintiffs moved to compel production of the photographs. At the hearing held before Magistrate Judge Michael Dollinger on March 26, 2008, plaintiffs' counsel argued that he needed the photographs for purposes of identifying other officers who may have been involved with the incident through civilian non-parties who purportedly witnessed the incident.[2] The City objected to producing the photographs for such purposes. Alternatively, it argued that it should only be required to produce the photographs after it has the opportunity to depose the witnesses first so that it could established the witnesses' independent recollection of what they looked like. The City also requested that it be allowed to maintain custody of the photographs and permit plaintiff and/or his witnesses the opportunity to view the photographs at a mutually agreed upon time and place. Judge Dolinger denied both requests resulting in the instant appeal.

The City respectfully requests that the Court grant the instant application for a protective order directing that plaintiffs first identify the witnesses it intends to show the officers pictures to and then permit the City the opportunity to depose the named witnesses *prior* to making the photographs available for their viewing. Unlike Castro v. City of New York, 94 CV 5114, 1995 U.S. Dist. LEXIS 17631 (S.D.N.Y. 1995) (J. Dolinger), plaintiff does not seek the photographs for purposes of identifying an as yet un-named officer involved in the incident. In Castro, the photographs were sought to identify which of five black female officers assigned to the precinct conducted the alleged strip search. Here, plaintiffs have already viewed the photographs during their CCRB interview and have identified all the officers they recognized as being involved in

---

[2] Plaintiffs have not named the witnesses it plans to show the photographs to, nor have they specified the witnesses in their initial disclosures.

the incident.  This being the case, it is difficult to see what discovery purpose would be served by showing the same photographs to other persons who purportedly witnessed the incident.  The City's concern is that plaintiffs will point out the officers they have accused in this case in an effort to bolster their claims against the already identified police officers.  Such a result will be obviated if the City is given the opportunity to first depose the witnesses so as to get an account of their independent recollection as to what the officers looked like.  The witnesses can also be shown the photographs at the deposition and have the opportunity to identify them there under circumstances that are fairer to defendant.   This situation is not unlike those cases when a party seeks discovery of surveillance video or audio.  In such cases, "Second Circuit courts have delayed the production of audio or video tapes prior to one or more deposition in order to prevent the defendant or its witnesses from tailoring their testimony to conform to their prior recorded statements or actions." Poppo v. Aon Risk Servs., 00 Civ. 4165 (HB), 2000 U.S. Dist LEXIS 17588 (S.D.N.Y. Dec. 6, 2000); see also Weinhold v. Witte Heavy Lift, Inc. 1994 U.S. Dist. LEXIS 4559 (S.D.N.Y. 1994); Tribune Co. v. Purcigliotti, 93 Civ. 7222, 1997 U.S. Dist. U.S. Dist. LEXIS (S.D.N.Y. 1997).  The concerns raised in the foregoing cases are identical to the ones presented here, namely, that plaintiffs' witnesses will tailor their testimony about which officers they observed based on their previous viewing of their pictures.  Plaintiffs cannot realistically argue that will be prejudiced by producing the photographs under such conditions.  The witnesses are already located and all that remains is for them to identify the officers they supposedly observed so no further discovery purpose is served by producing the photographs at this time.  Accordingly, the Court should grant the City's motion to the extent of delaying the release of the officers photographs until such time as defendants have the opportunity to depose the witnesses.

The City also opposes turning over the photographs or copies of them to plaintiffs.  Several of the officers in the photo array work undercover in the NYPD Anti-Crime Unit and their safety and effectiveness may be compromised if their photographs are misused or misplaced.  As stated by this Court in Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004), "when judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." Collens, 222 F.R.D. at 252 (citing Fed. R. Civ. P. 26(b)(1) Advisory Committee notes to 2000 Amendments).  Here, the needs of both parties will be met by permitting the City to retain sole custody of officers photographs while allowing plaintiffs to view them at its counsel's office.  Accordingly, defendants respectfully submit that the photographs be made available to plaintiff and his attorney for inspection at Corporation Counsel's office rather than being turned over to plaintiffs' attorney under the protection of the protective order.[3]

### Defendant Krantz's Termination Records

At the March 26, 2008 hearing, Magistrate Judge Dollinger directed the City to produce disciplinary records of all the defendant police officers to the extent that they relate to charges similar to those alleged by plaintiffs herein (i.e., false arrest, abuse of authority, excessive force) and to charges related to dishonesty.  The City is not opposing this order.  However, in addition

---

[3] This relief is requested regardless of whether the Court grants the City's foregoing request for a delay in production of the photographs.

- 3 -

to the foregoing, the Court also directed the City to produce records associated with defendant Krantz's termination from the police officer subsequent to this incident. According to information contained in the CCRB investigation, defendant Krantz was terminated from the NYPD for failing a drug test. The City is opposing this order inasmuch as drug use does not relate to the underlying charges brought by plaintiffs here. <u>See e.g.</u> <u>Reyes v. City of New York</u>, 2000 U.S. Dist. LEXIS 15078 (S.D.N.Y. 2000) ("where CCRB records contain allegations wholly unrelated to those alleged in the complaint, their relevance has been found to be "too tenuous to allow discovery.") citing <u>Katt v. New York City Police Dep't</u>, 1997 U.S. Dist. LEXIS 10014 (S.D.N.Y. 1997). At the very least, the Court should direct an *in camera* review of the charges to determine their relevancy to the claims brought herein, prior to their production. King v. Conde, 121 F.R.D. 189 (E.D.N.Y. 1988).

Based on the foregoing, it is respectfully requested that the Court issue a protective order delaying production of photographs until defendant has the opportunity to depose the witnesses to whom the photographs will be shown to, and for an order requiring plaintiffs to view the photographs at defendant's counsel office or such other reasonable location convenient to both parties. The City also request a protective order with respect to turning over defendant Krantz's termination records, or, alternatively, directing an in camera review to determine relevancy prior to their release.

    Respectfully submitted,

    Steve Stavridis
    Special Federal Litigation Division

cc:    Matthew Flamm, Esq. (By ECF)
        Attorney for Plaintiffs